UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LAWRENCE R. BURFITT, II,
Plaintiff,

vs.

C/O M. ERVING, et al.,
Defendants.

Case No. 1:18-cv-260
Barrett, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, a former inmate at the Southern Ohio Correctional Facility ("SOCF") proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 alleging that defendants Ervin, Ruckel, Parish, Esaum, Buroughton, Sparks, and Warren used excessive force against him, and defendant Nolan failed to protect him from this alleged excessive force. (Doc. 4). This matter is before the Court on defendants' motion for summary judgment (Doc. 38), plaintiff's response in opposition (Doc. 43), defendants' reply memorandum (Doc. 45), and plaintiff's supplemental memorandum (Doc. 46).[1]

## I. Facts

This lawsuit arises out of an incident that occurred at SOCF in September 2017. The following facts are undisputed.[2]

---

[1] Plaintiff does not oppose summary judgment to defendant Buroughton as he claims that this defendant was mistakenly included in the original complaint. (Doc. 43 at 7). Therefore, summary judgment should be granted to defendant Buroughton.

[2] In support of their motion for summary judgment, defendants present the following evidence: documents from the Use of Force Investigation, (Doc. 38-1), photographs of both plaintiff and defendant Ervin's injuries and photographic evidence showing a large amount of blood on the L-4 Unit floor following the incident (Docs. 38-2, 38-3, 38-4, 38-5, 38-6, 38-7), plaintiff's grievance records showing he admitted to striking defendant Ervin and placing him in a chokehold (Doc 38-8), RIB hearing documents (Docs. 38-9), video evidence of the September 19, 2017 incident (Doc. 38-10), medical records from the Ohio State University Medical Center (Doc. 38-11), and affidavits of defendant Brian Nolan (Doc. 38-12), Nurse Practitioner David Conley (Doc. 38-13), Nurse Jesse Mault (Doc. 38-14), Nurse Janie Sharp (Doc. 38-15), Nurse Larissa MacDonald (Doc. 38-16), and Deputy Warden of Operations for SOCF William Cool, verifying the authenticity of the records, video, and photographic evidence presented by defendants (Doc. 38-18). The facts, as established by defendants' evidence, are undisputed. As discussed *infra*, plaintiff has failed to present any competent evidence in opposing defendants' motion for summary judgment. Therefore, defendants' evidence stands unrebutted.

On September 19, 2017, defendant Ervin worked in the L-4 Unit and escorted plaintiff to the shower for a shakedown around 2:00 P.M. (Use of Force Investigation Summary Report, Doc. 38-1 at 1-2). While walking towards the shower, defendant Ervin gave plaintiff multiple orders to face forward and cease arguing with him. (*Id.*). Defendant Ervin then took out his Oleoresin Capsicum ("OC") spray as a precaution but did not immediately discharge it. (*Id.*). Plaintiff then turned his body and "squared up" with defendant Ervin, which made defendant Ervin deploy the OC spray to plaintiff's face. (*Id.*; Doc. 38 at 3). Plaintiff then began to punch defendant Ervin and defendant Ervin exchanged punches in return. (*Id.*). Plaintiff then attempted to gain control of defendant Ervin's baton, but defendant Ervin was able to regain control of it. (Doc. 38-1 at 2). Plaintiff does not dispute that he struck defendant Ervin in the face and took his baton. (Notification of Grievance, Doc. 38-8 at 2). Plaintiff then wrapped his arms around defendant Ervin's neck in a chokehold, causing a laceration to defendant Ervin's lip. (Doc. 38-1 at 2, Doc. 38-8 at 2; Doc. 43-1 at 8). Defendant Ervin then struck plaintiff in the abdomen with his baton, which caused plaintiff to release the chokehold. (Doc. 38-1 at 1-2). Defendant Ervin then pushed plaintiff against the wall and delivered "closed fist strikes" to plaintiff's face. (*Id.*). Recreation Supervisor Mummert arrived on the scene to assist defendant Ervin in "subduing" plaintiff. (*Id.* at 2). According to Mummert, he observed defendant Ervin pushed up against the railing of the top range, and it looked as if plaintiff was attempting to push defendant Ervin off the rail. (*Id.*). Mummert then apprehended plaintiff and brought him to the ground. (*Id.*). Plaintiff continued to resist orders to cuff up. (*Id.*) Defendant Ervin struck plaintiff's arm with his baton and was able to place him in handcuffs. (*Id.*).

Next, officers transported plaintiff to the infirmary. (Doc. 38-1 at 2-4). Several Officers responded to the Signal 3 "man down alarm," including Correction Officers Goodwin, Parish,

Ruckel, and Fri, Sergeant Sammons, and Lieutenant Joseph. (Doc. 38-1 at 2-4). Plaintiff refused to walk and resisted while being escorted to the infirmary. (*Id.*). Upon entering the infirmary, plaintiff turned and kicked Officer Fri. (*Id.* at 3). Officer Fri and defendant Parish then took plaintiff to the ground. (Doc. 38-1 at 2-3). According to Officer Fri, while on the ground, plaintiff grabbed his hand and was given several orders to let go, but he refused. (*Id.*). Officer Fri responded by administering a "palm heal strike" to plaintiff's shoulder, causing plaintiff to eventually comply. (*Id.*). In his inmate use of force statement, plaintiff stated, "I pray God strikes you all down dead. I was trying to get you guys to kill me. I am too proud to kill myself." (Doc. 38-1 at 33).

Once assessed in the infirmary, Nurse Practitioner David Conley determined that plaintiff should be sent to the Ohio State University Medical Center due to possible facial fractures. (Conley Affidavit, Doc. 38-13 at ¶ 6; Medical Exam Report, Doc. 38-1 at 50). A CAT scan was performed at the hospital, which revealed mandible (jaw), zygomatic arch fracture (cheekbone), and nasal fractures. (Doc. 38-11 at 3). Plaintiff underwent four procedures to address each fracture – the cheekbone and nasal fractures were closed, and plaintiff's jaw was plated with a compression plate and tension band. (*Id.*). Plaintiff had no complications from the procedures and was discharged from the hospital on September 21, 2017. (*Id.*).

On September 26, 2017, the Rules Infraction Board found plaintiff guilty of violating inmate rules 3, 21, and 61. (Doc. 38-9 at 7). On June 29, 2018, Investigating Official Captain Gary Daniel completed a Use of Force Investigation and deemed the force justified. (Doc. 38-1 at 4). The Warden subsequently reviewed these findings and concurred. (*Id.* at 5).

3

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380

4

(2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Matson v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Matson*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

### III. Analysis

At the outset, the undersigned notes that plaintiff has failed to support his opposition to defendants' motion for summary judgment as required by the Federal Rules of Civil Procedure. In particular, Rule 56(c) provides that a party asserting there exist facts that are genuinely disputed must support his assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

5

stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The Court recognizes that plaintiff is proceeding pro se. Regardless, he is required to set forth admissible evidence that supports his claims and raises genuine issues for trial in opposing defendants' properly supported summary judgment motion. *See McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 558 (6th Cir. 2003) (pro se litigants "are not entitled to special treatment, including assistance in regards to responding to dispositive motions.").

On March 14, 2019, this Court notified plaintiff of his obligation to respond to the instant summary judgment motion. (Doc. 40). This notice specifically advised plaintiff of his obligation to not rest upon the allegations in his complaint but to provide evidence setting forth specific facts showing that there is a genuine issue for trial. *See also Anderson,* 477 U.S. at 248. Plaintiff's response fails to satisfy this obligation. Plaintiff does not identify or proffer any evidence supporting his claims in this case. Plaintiff's declaration does not set forth specific facts showing a genuine dispute for trial. Plaintiff avers that his cell was searched and "badly" destroyed on September 14, 2017 by an unnamed officer because plaintiff "bragged about suing his partner." (Doc. 43 at 9). Plaintiff then states that on September 19, 2017, "Officer Hitch" came to plaintiff's cell and told him that his cell was searched because another officer accused plaintiff of masturbating in front of her. Plaintiff states, "Apparently, they told second shift and this prompted Officer Ervin's unprofessional behavior towards me." (*Id.*). The hearsay statement from "Officer Hitch" is inadmissible and cannot be considered on summary judgment. In addition, plaintiff's statement that the second shift, and by extension, Officer Ervin, was "apparently" advised of this information is mere speculation about Officer Ervin's motives that does not create a genuine issue for trial resolution. *See Bell v. Ohio State Univ.*, 351 F.3d 240,

253 (6th Cir. 2003) (Sixth Circuit has long held that "[m]ere conclusory and unsupported allegations, rooted in speculation" do not meet burden of setting forth specific facts showing a genuine issue for trial) (quoting *Bryant v. Com. of Ky.*, 490 F.2d 1273, 1274 (6th Cir. 1974) (per curiam)). The remainder of plaintiff's declaration and the other inmate declarations submitted by plaintiff (Doc. 43-1 at 17, 77) include assertions unrelated to the incidents in this lawsuit. Finally, plaintiff's unsworn complaint, which was not signed under penalty of perjury, does not constitute evidence to show that there is a genuine issue of material fact for trial. *See Maston*, 832 F. Supp. 2d at 851-52 (holding that a pro se party cannot rely on allegations or denials in unsworn filings when opposing a motion for summary judgment). Therefore, defendants' evidence stands unrebutted.

### A. Exhaustion of Administrative Remedies

#### 1. Legal Standard

Exhaustion of administrative remedies is mandatory under the Prison Litigation Reform Act ("PLRA") and unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. §1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior or filing suit 'is an affirmative defense under the PLRA." *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir.

7

2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. *Id.*

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "To properly exhaust a claim, prisoners must tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

The PLRA specifies that inmates must exhaust all "available" administrative remedies. Thus, courts may excuse the failure to exhaust if they determine that administrative remedies were unavailable. Administrative remedies may be unavailable when they would "deter a person of ordinary firmness from [continuing with the grievance process]." *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999); *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)), *aff'd on other gds.*, *Simmons v. Himmelreich*, 136 S. Ct. 1843 (2016). The U.S. Supreme Court has defined the term "available" as being "capable of use." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016).

8

Examples of circumstances where remedies are considered "unavailable" include: when it operates as a dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; when the administrative scheme is so difficult to understand that no ordinary prisoner can navigate it; or when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation. *Id.*

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member within fourteen days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(K)(1). Second, if the inmate is unsatisfied with the response to his informal complaint, he may file a formal grievance with the inspector of institutional services at his institution of confinement. Ohio Admin. Code § 5120-9-31(K)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within fourteen calendar days of receipt of the grievance. *Id.* If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the office of chief inspector of the Ohio Department of Rehabilitation and Correction ("ODRC") within fourteen days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(K)(3).

### 2. Resolution

Defendants argue that plaintiff failed to exhaust his administrative remedies because he did not complete the third and final step of the mandatory grievance process (Doc. 38 at 15; Doc. 38-17 at 4). In support, defendants provide the affidavit of ODRC Assistant Chief Inspector Eugene Hunyadi, who is a custodian of grievance records. (Doc. 38-17). Mr. Hunyadi attests that he thoroughly reviewed plaintiff's grievance file. (*Id.* at ¶ 13). Mr. Hunyadi attests that

plaintiff completed the first and second steps of the grievance process codified in Ohio Admin. Code § 5120-9-31 but did not complete the third and final step by filing an Appeal with the Chief Inspector's Office. (*Id.*). Mr. Hunyadi further attests that there are instances where plaintiff did successfully exhaust his administrative remedies, thereby demonstrating that he was aware of how to properly use grievance procedures. (*Id.* at ¶¶ 14-15).

In response, plaintiff alleges that took every step to file his appeal in good faith, but state officials "clearly took great steps to prevent this case from commencing." (Doc. 43 at 6). Plaintiff argues that Mr. Hunyadi's affidavit should therefore be discounted. (*Id.*).

On this record, defendants have submitted evidence of non-exhaustion that "no reasonable jury would be free to disbelieve." *Surles*, 678 F.3d at 455-56. Based on the Hunyadi declaration and plaintiff's own admission in response to defendants' motion for summary judgment that he did not timely file an appeal with the Chief Inspector's Office, no reasonably jury would find that plaintiff exhausted his administrative remedies.

Nevertheless, plaintiff alleges that prison officials prevented his efforts to timely file an appeal. (Doc. 43 at 6; Doc. 43-1 at 31). Even if prison officials meet their burden of establishing non-exhaustion, summary judgment may be denied if a prisoner "has demonstrated that a genuine issue of material fact exists as to whether [defendants] improperly prevented [him] from exhausting his administrative remedies." *Himmelreich*, 766 F.3d at 578. Here, however, plaintiff has failed to provide evidence demonstrating that prison officials improperly prevented him from filing an appeal to the Chief Inspector's Office. Plaintiff merely makes unsworn assertions that prison officials tampered with his legal work and made him miss the deadline for filing an appeal. (Doc. 43 at 6; Doc. 43-1 at 31). Moreover, plaintiff has failed to present evidence documenting specific information about who, when, where, or how he was prevented

10

from pursuing the third step of the prison grievance procedure, nor has he presented evidence demonstrating that he *did* attempt to submit a timely appeal. *See Maston*, 832 F. Supp. 2d at 851-52 (pro se party cannot rely on allegations in unsworn filings). Plaintiff's general unsworn assertions that he was prevented from exhausting his administrative remedies are insufficient to create a genuine dispute of fact as to whether he properly exhausted his administrative remedies as required under the PLRA. Therefore, defendants' motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies should be granted. However, in the event that the recommendation on the exhaustion issue is not adopted, the Court will also consider the parties' arguments on the merits of plaintiff's Eighth Amendment claims.

**B. Eighth Amendment Excessive Force Claims against defendants Ervin, Ruckel, Parish, Eshem, Sparks, and Warren**

### 1. The Parties' Arguments

Defendants argue that summary judgment should be granted in their favor because the use of force in the L-4 Unit was appropriate given plaintiff's attempt to seriously harm defendant Ervin. (Doc. 38 at 10). Defendants argue that the physical force exerted was a "direct response to a noncompliant Plaintiff, who was assaulting Defendant Ervin and who would not obey verbal directives." (*Id.*). Defendants argue that plaintiff therefore cannot satisfy the subjective component of his Eighth Amendment excessive force claim. (*Id.* at 11). Defendants further argue that plaintiff's claim of an "off camera" attack in the infirmary is not supported by the record. Defendants state that this allegation is contradicted by nurses who attest that officers did not "beat up" plaintiff in the infirmary and that the extent of plaintiff's injuries was apparent when he arrived in the infirmary, thereby supporting the conclusion that plaintiff suffered his facial injuries during the incident with defendant Ervin prior to entering the infirmary. (*Id.* at 9-10).

11

In response, plaintiff argues that defendants' motion for summary judgment should be denied. Plaintiff disputes that he "squared up," thereby triggering defendant Ervin to use the OC spray. (Doc. 43 at 3). Plaintiff contends that the video evidence shows his hands were down before he was sprayed with O/C spray. (*Id.*). Plaintiff also alleges that he was beat up "off camera" in the infirmary and therefore there is no video evidence to support it. (*Id.*). He alleges that the severity of his injuries, coupled with the lack of injury sustained by defendant Ervin, constitutes evidence that he was physically assaulted "off camera" in the infirmary by other officers. (*Id.*). Plaintiff argues that because defendant Ervin did not sustain injuries to his hands beyond minor redness, he is not the "sole person" who caused plaintiff's fractures. (*Id.*). As evidence in opposition to defendants' motion for summary judgment, plaintiff provides the same documents that defendants submitted in connection with their motion for summary judgment, as well as a handwritten sketch documenting his injuries from the incident. (Doc. 43-1).[3] Plaintiff also claims that defendants did not preserve evidence that would show excessive force, including video evidence showing him being escorted to the infirmary and declarations of inmates who witnessed the September 19, 2017 incident. (*Id.* at 4-5).

**2. Legal Standard**

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). An Eighth Amendment claim has both a subjective and an objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The

---

[3] Plaintiff also provides excerpts from the Ohio Administrative Code (Doc. 43-1 at 1-5, 21-22, 25-26) and publications about prison conditions (Doc. 43-1 at 19-20, 28-29). It is unclear to the Court how these materials relate to his Eighth Amendment claims surrounding the September 19, 2017 incident. Plaintiff also submits a self-declaration executed on April 8, 2019 that describes events occurring at SOCF unrelated to the September 19, 2017 incident forming the basis for his Eighth Amendment claims. (Doc. 43 at 8-10). Plaintiff also submits declarations from inmates Daymond Haywood and Jerone McDougald, both of which are unrelated to the September 19, 2017 incident.

"core judicial inquiry" on the subjective component is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Excessive force claims must focus "on the nature of the force rather than on the extent of the injury. . . ." *Id.* at 34. In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the responsible official; and the extent of the injury inflicted. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-321.

The objective component requires the "pain inflicted to be 'sufficiently serious.'" *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). Analysis of this element of an Eighth Amendment claim "requires a contextual investigation, one that is responsive to contemporary standards of decency." *Id.* (citations and internal quotations omitted). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81 (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are violated . . . [w]hether or not significant injury is evident." *Id.* (quoting *Hudson*, 503 U.S. at 9).

### 3. Resolution

Plaintiff has failed to establish a genuine issue of fact on the subjective and objective components of his Eighth Amendment excessive use of force claim. The undisputed evidence shows that plaintiff's injuries were the result of defendants' good faith efforts to maintain and restore discipline. Defendants' efforts were based on the need for the use of force, the relationship between that need and the type and amount of the force used, the threat reasonably

13

perceived by defendant Ervin, and the extent of the injury inflicted. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-321.

As a preliminary matter, the Court separates the alleged incidents of excessive force into three categories based on plaintiff's allegations: (1) the initial use of the OC Spray; (2) the force used by defendant Ervin in the L-4 Unit; and (3) the alleged off-camera assault in the infirmary.

As a matter of law, plaintiff has not satisfied the subjective component of his excessive force claim for the initial use of the OC spray and the force used by defendant Ervin in the L-4 Unit. The evidence demonstrates that defendant Ervin used force in a good-faith effort to restore discipline in response to plaintiff's non-compliance with orders and threatening behavior in the L-4 Unit. First, deploying a short burst of pepper spray in response to an inmate who is disruptive and aggressive is not disproportionate to the need to control an unruly inmate and does not satisfy the subjective component of the Eighth Amendment claim. *See Jennings*, 93 F. App'x at 725 ("[t]he videotape squarely demonstrates that [plaintiff] disobeyed repeated direct orders prior to use of pepper spray."). Here, the evidence corroborates defendant Ervin's assertion that he placed his hand on the OC Spray when plaintiff turned around to face him, and he deployed that spray only when the plaintiff raised his arms in a disruptive manner. Although plaintiff alleges that he did not "square up" when confronted by defendant Erving, he has failed to present evidence beyond his own unsworn assertions to create a genuine issue of fact that defendant Ervin used excessive force in deploying the initial burst of the OC spray.

The evidence also establishes that plaintiff responded to the OC spray by striking defendant Ervin in the face. Plaintiff has presented no evidence to dispute that he struck defendant Ervin in the face, took defendant Ervin's baton, and placed defendant Ervin in a chokehold. Indeed, plaintiff admits to striking defendant Ervin and placing him in a chokehold.

14

(Doc. 43-1 at 8) ("C/O Erving [sic] then sprayed me with his O/C spray and I subconsciously struck him in the face before I came out of my slippers. From there we wrestled and I took his PR-24 and struck him with it. Eventually at some time I wrapped my arm around C/O Erving's [sic] neck.").

Plaintiff alleges that he submitted himself willingly upon the arrival of other officers and that the strikes delivered by defendant Ervin while plaintiff was on the ground were therefore excessive. (Doc. 43 at 2). Plaintiff asserts that another inmate witnessed defendant Ervin strike him on the head with the baton while he was on the ground. (*Id.*). However, plaintiff has failed to submit evidence demonstrating that he submitted himself willingly to dispute defendants' sworn affidavits, use of force investigation documents, and video evidence to the contrary. The evidence submitted by defendants shows that plaintiff continued to resist orders and combat defendant Ervin. Recreation Supervisor Mummert arrived on the scene and observed plaintiff attempting to push defendant off the rail of the top range of the L-4 Unit. (Doc. 38-1 at 2). These events indicate the threat was reasonably perceived to be proportional to the force used.

Finally, the Court turns to plaintiff's excessive force claim as it relates to the alleged "off-camera" beating in the infirmary. Defendants present affidavits from Nurse Practitioner Conley, Nurse Mault, Nurse Sharp, and Nurse McDonald attesting that they did not witness plaintiff being struck or otherwise beat up by officers during his stay in the infirmary. (Docs. 38-13, 38-14, 38-15, 38-16). These nurses attest that if they had witnessed any inappropriate behavior, they would have completed incident reports. (Docs. 38-14, 38-15, 38-16).

Although the filings of a *pro se* litigant are to be liberally construed, plaintiff still has a duty to support his factual assertions on summary judgment with admissible evidence. *Matson*, 832 F. Supp. 2d at 851-52 (citing *Viergutz*, 375 F. App'x at 485). Here, plaintiff has not

15

presented evidence demonstrating that he was subjected to an "off-camera" beating, nor has he presented evidence to dispute defendants' evidence to the contrary. Plaintiff's allegation that the nurses' affidavits are "untruthful" (Doc. 43 at 7) is insufficient to demonstrate that an "off-camera" beating occurred. Plaintiff also argues that the "off-camera" beating is evident in light of the severity of plaintiff's injuries and the lack of severity of defendant Ervin's injuries. (Doc. 43 at 3). However, both allegations are speculative and insufficient to create a genuine issue of fact in light of the evidence presented by defendants, including the video evidence and the use of force reports, which demonstrate that plaintiff sustained his injuries from the altercation with defendant Ervin in the L-4 Unit.

Accordingly, because plaintiff has failed to establish a genuine issue of fact as to whether defendants used excessive force during the September 19, 2017 incident, summary judgment should be granted in favor of defendants on plaintiff's Eighth Amendment excessive force claim.

### C. Failure to Protect Claims

#### 1. Legal Standard

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment claim against prison officials based on their failure to protect the plaintiff from harm, a plaintiff must present evidence showing that the defendant's conduct amounted to "deliberate indifference" to a known risk of harm. *Farmer*, 511 U.S. at 837. *See also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). Deliberate indifference includes both objective and subjective elements. *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). The objective element requires the harm to be "sufficiently serious." *Curry*, 249 F.3d at 506 (quoting *Farmer*, 511 U.S. at 834). Therefore,

"the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective element focuses on whether prison officials know that inmates face a substantial risk of harm and "disregard[] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id.* at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. It is not enough that the official "should" have perceived a significant risk but did not. *Id.*

### 2. Resolution

The Court concludes that summary judgment should be granted to defendant Nolan on plaintiff's Eighth Amendment failure to protect claim because, for the reasons stated above, plaintiff has failed to support his factual allegations that there was an "off-camera" attack by officers in the infirmary that defendant Nolan observed. Plaintiff's version of events is contradicted by sworn affidavits from the nurses on the scene, such that no reasonable jury could believe it. Plaintiff has made only speculative and unsworn allegations which are insufficient to create a genuine dispute as to whether this off-camera attack took place and whether defendant Nolan was deliberately indifferent to a known risk of harm to plaintiff. Where there is no evidence that the alleged attack actually occurred, defendant Nolan could not have been deliberately indifferent to a known risk of harm to plaintiff. Accordingly, summary judgment should be granted to defendant Nolan.

## IV. Conclusion

Based on the foregoing, it is **RECOMMENDED** that:

1. Defendants' motion for summary judgment (Doc. 38) be **GRANTED**.[4]

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 11/27/19

Karen L. Litkovitz
United States Magistrate Judge

---

[4] Defendants also argue that they are entitled to qualified immunity. (Doc. 38 at 15-16). Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court need not address whether defendants are entitled to qualified immunity because the record shows there is no genuine dispute of material fact as to whether these defendants violated plaintiff's Eighth Amendment rights and therefore, as a matter of law, defendants are entitled to summary judgment.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| LAWRENCE R. BURFITT, II,<br>Plaintiff, | Case No: 1:18-cv-260<br>Barrett, J.<br>Litkovitz, M.J. |
| vs. | |
| C/O M. ERVING, et al.,<br>Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).